IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| BRIAN CASEY PARKER, | ) | |
| | ) | |
| Petitioner, | ) | CASE NO. 7:18CV00413 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| HAROLD CLARKE, | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Respondent. | ) | |

Brian Casey Parker ("Parker" or "Petitioner"), a Virginia inmate proceeding *pro se*, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2015 felony firearm convictions in Pittsylvania County (Case Nos. CR15000102-00 and CR15000103-00). The matter is presently before the court on respondent's motion to dismiss. After reviewing the record and the parties' pleadings, the court will grant the motion and dismiss Parker's petition.

## I. Factual Background and Procedural History

On February 20, 2015, a grand jury for Pittsylvania County indicted Parker for several offenses, including possession of a firearm by a convicted felon, in violation of Virginia Code § 18.2-308.2(A), and possession of a firearm while possessing more than one pound of marijuana with the intent to distribute, in violation of Virginia Code § 18.2-308.4(C).[1]

---

[1] The grand jury also indicted Parker for manufacturing marijuana, in violation of Virginia Code § 18.2-248.1(C), possession with intent to distribute marijuana, in violation of Virginia Code § 18.2-248.1(A)(3), and two counts of conspiracy, in violation of Virginia Code § 18.2-22 (one for each marijuana offense). Parker pleaded guilty to those charges, and he does not appeal his convictions and sentences for those offenses.

(Pittsylvania County Circuit Court Record, "R.", at 5–6.)[2] At the Commonwealth's request, the matter was scheduled for a jury trial on June 10, 2015. Because witnesses were not present, Parker requested a continuance; the trial court initially denied that request. After some discussion between the parties, Parker decided to plead "no contest" to his drug charges and the Commonwealth agreed to waive a jury trial on the remaining firearm charges. Parker then renewed his request for a continuance of the contested matters. After accepting his "no contest" pleas on the drug charges and "not guilty" pleas on the firearm charges, the trial court released the jury and continued the remaining matters for a bench trial. Because one officer was not available on the new trial date, the parties and court agreed to take Lt. Barrett's testimony on June 10 before court adjourned. (*Id.* at 43–44.)  That testimony was primarily chain-of-custody evidence regarding the drugs and guns seized during the August 2014 search.

On July 29, 2015, the day before the remaining evidence was scheduled to be heard, Parker's counsel filed a motion to suppress evidence regarding the weapons found in his residence on the grounds that the search warrant was defective. Specifically, Parker alleged that the warrant and affidavit incorrectly identified the address as 297 Deerwood Creek Rd., whereas Parker lived at 296 Deerwood Creek Rd. in Ringgold, Virginia. (*Id.* at 52–53.)  The court ruled that the motion was untimely under Virginia Code § 19.2-266.2 and Rule 3A:9(c) of the Rules of the Supreme Court of Virginia. For the record, the parties proffered the evidence that would have been offered had the court entertained the motion. Parker's attorney noted that Andrew Davis, former owner of the property, would testify that he had originally

---

[2] The factual and procedural allegations herein are drawn from the pleadings and attachments thereto filed by the parties [ECF Nos. 1 & 25] and from the paper and electronic records from the Pittsylvania County Circuit Court, the Court of Appeals of Virginia, and the Supreme Court of Virginia, on file with the Clerk.

owned the entire parcel, until it was subdivided into 293 Deerwood Creek where his son now lived, 296 Deerwood Creek where Parker lived, and 301 Deerwood Creek where he (Davis) continued to live. He stated that there had never been a 297 Deerwood Creek on the street. Parker's counsel argued that Parker was not at the residence when the warrant was served and that he was simultaneously taken into custody 19 miles away from the residence where the warrant was executed. Because Parker was in custody and not on the residential premises at Deerwood Creek, he argued that officers should have secured the premises and obtained a correct warrant when they realized the address was wrong. The Commonwealth noted that the County GIS system had generated an address of 297 Deerwood Creek Rd. Further, the affidavit had a photograph of the front of the house, the same house that had been under surveillance prior to obtaining the warrant, and the same house that they searched. The officers obtained the warrant and relied upon it in good faith. By the time they realized that the street number on the face of the warrant was incorrect, they were already executing the warrant inside the house. Based on the proffered evidence, the trial judge noted that she would have denied the motion to suppress if she had ruled on the merits. (*Id.* at 307–18.)

Following conclusion of the trial on July 30, 2015, the court found Parker guilty on both charges. The opinion from the Court of Appeals of Virginia accurately summarizes the evidence in the light most favorable to the Commonwealth, the prevailing party:

> . . . [Parker] was operating a marijuana "grow house" nineteen miles from his residence. Investigators simultaneously executed two search warrants [on August 21, 2014], one at the grow house and the other at [Parker's] residence. [Parker] was at the grow house at the time of the searches. [Parker] was cooperative and admitted his involvement in the marijuana growing operation. The police found no firearms in the grow house. During the search of the grow house, [Parker spoke with his wife on one of

3

> the officer's cell phones] and told her to cooperate with the police and to open the safe in their home. Police found several firearms in the safe. The safe also contained a small amount of marijuana, marijuana smoking devices, and digital scales, one of which had marijuana residue on it. Investigators found two handguns in the master bedroom. One handgun was in a nightstand on one side of the bed and the other under the bed, on the other side, near the head of the bed. They also found ammunition consistent with the firearms. The police found [Parker's] identification card [in a kitchen cabinet] lying on top of a bullet and a package with [Parker's] name and address [along with a box from a gun manufacturer, underneath the bed].
>
> [Parker] testified the firearms belonged to his wife. He asserted he did not have the combination to the safe and that she kept the firearms locked in the safe to keep them out of his possession. [Parker] further denied knowledge of the presence of the two handguns in the master bedroom and presented evidence that other people slept in the bedroom on occasion. Defense witnesses testified they only saw [Parker's] wife access the safe.

(Court of Appeals of Virginia, Record No. 1434-15-3, "CAV R.", at 57–58.) The defense also introduced a receipt for the gun found under the bed, showing the purchaser as Zachary Spence (a co-defendant) in 2013. (R. at 546.) Spence was also one of the persons who had slept in the Parkers' bedroom, the last time being in May 2014. (*Id.* at 401–02.)

After finding Parker guilty of constructive possession of a firearm by a convicted felon and constructive possession of a firearm while possessing marijuana with the intent to distribute, the court continued the matter for sentencing on August 19, 2015, following completion of a presentence report. (*Id.* at 54–55.) On August 19, the court sentenced Parker on all six charges. As is relevant to this proceeding, the court imposed the mandatory sentence

of five years on each of the gun charges, to be served consecutively, for a total of ten years. (*Id.* at 87–89.)[3]

Parker appealed his firearm convictions to the Court of Appeals of Virginia, asserting that the evidence was insufficient to support his convictions, and that the trial court had erred in holding the motion to suppress untimely and in stating that she would have denied the motion to suppress on its merits. By per curiam opinion dated March 25, 2016, the Court of Appeals denied Parker's appeal. (CAV R. at 55–60.) Parker then appealed to the Supreme Court of Virginia, which denied his petition on February 2, 2017, and denied his petition for rehearing on March 24, 2017. (*Id.* at 72–73.) Parker did not petition the United States Supreme Court for certiorari.

On October 6, 2017, Parker filed a petition for habeas corpus in the Supreme Court of Virginia, raising two claims: (1) trial counsel provided ineffective assistance in failing to file a motion to suppress statements Parker made to his wife on the phone, in the presence of police officers, when the police had not read Parker his <u>Miranda</u> rights; and (2) the trial court lacked jurisdiction to try the case without a jury. On April 19, 2018, the court dismissed the habeas petition.

On July 17, 2018, Parker timely filed his petition in this court by placing the petition in the institutional mail. The petition raises the following claims:

(1) The trial court erred in ruling that the motion to suppress filed July 29, 2015, was untimely;

---

[3] Parker's total sentence on all six charges was 62 years, with 46 years and 10 months suspended. The ten- year sentences for the firearms charges were mandatory and cannot be suspended. His active time on the marijuana charges totaled 5 years and 2 months after the remaining time was suspended.

(2) The trial court erred in determining that the search warrant was valid and, therefore, the motion to suppress would not have been granted if considered on the merits;

(3) The trial court erred in convicting the defendant of possession of a firearm by a violent felon and of possession of a firearm while possessing more than a pound of marijuana with the intent to distribute or manufacture where the firearms were nineteen miles away from Parker's drugs and were never connected to Parker;

(4) The trial court failed to obtain a waiver of jury trial from Parker before trying him without a jury;

(5) Trial counsel provided ineffective assistance of counsel in failing to file a pretrial motion to suppress statements Parker made to his wife; and

(6) The evidence was insufficient to sustain his convictions as a matter of law.

(ECF No. 1.)

## II. Federal Habeas—Standard of Review and Limitations

A federal court may grant a petitioner habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254 (a). A federal district court reviewing a § 2254(a) petition is significantly limited by the separate but related doctrines of exhaustion, procedural default, and independent and adequate state law grounds. These doctrines promote the principles of finality, comity, and federalism, recognizing a state's legitimate interests in enforcing its laws, preventing disruption of state judicial proceedings, and allowing states the first opportunity to address and correct alleged violations of a state prisoner's federal rights. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991).

### A. Exhaustion

A habeas petitioner is required to exhaust his claims in state court before his claims can be considered in federal court. 28 U.S.C. § 2254(b)(1)(A). To exhaust his claims, a petitioner

must present his federal constitutional claims to the highest state court, on the merits, before he is entitled to seek federal habeas relief. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Failure to do so "deprive[s] the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 732.

### B. Procedural Default

A separate but closely related issue is the doctrine of procedural default. If a state court has clearly and explicitly denied a petitioner's claim based on a state procedural rule that provides an independent and adequate ground for the state court's decision, that claim is procedurally defaulted for purposes of federal habeas review as well. *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). A state procedural rule is independent if it does not depend on a federal constitutional ruling, and it is adequate if it is firmly established and regularly applied by the state court. *Yeatts v. Angelone*, 166 F.3d 255, 263–64 (4th Cir. 1998). A claim that has not been presented to the highest state court—and would be procedurally barred as untimely or successive if the petitioner tried to present the issue to the state court now—is considered simultaneously exhausted and defaulted. *Bassette v. Thompson*, 915 F.2d 932, 936–37 (4th Cir. 1990).

### C. Overcoming Procedural Default

Before a federal habeas court will consider a procedurally defaulted claim, the petitioner must show both cause for the default and actual prejudice as a result of the claimed federal violation. *Coleman*, 501 U.S. at 750. Cause for procedural default requires the existence of some objective factor, external to the defense and not fairly attributable to the prisoner. *Id.* at 756–57. To show prejudice to overcome procedural default, a petitioner must show that the claimed

violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

### III. Analysis of Claims

A. Claim 1 – Trial Court's Ruling on Timeliness of Motion to Suppress

"It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). The timeliness of Parker's motion to suppress under Virginia's procedural rules is a claim that rests solely on the interpretation of Virginia statutes, Virginia rules of court, and Virginia case law. As such, the timeliness of the motion to suppress is not cognizable on federal habeas review unless petitioner alleges that the state court's application of the statute is a cognizable violation of the federal constitution. See, e.g., *Wright v. Angelone*, 151 F.3d 151, 158 (4th Cir. 1998). Accordingly, Parker's first claim, which is based on the trial court's application of Virginia Supreme Court Rule 3A:9(c) and Virginia Code § 19.2-266.2, must be dismissed.

B. Claim 2 – Validity of the Search Warrant

Parker alleges in claim 2 that his Fourth Amendment rights were violated by admitting evidence seized under an invalid search warrant that stated the wrong address. The state appellate courts never ruled on the merits of Parker's motion to suppress this evidence because the court of appeals affirmed the trial court's holding that the motion was untimely under Virginia Supreme Court Rule 3A:9(c) and Virginia Code § 19.2-266.2. Rule 3A:9 has been consistently enforced as a procedural rule in the Commonwealth, and thus constitutes an independent and adequate grounds for the state court's decision. *See Prieto v. Commonwealth*, 721 S.E.2d 484 (2012). Under the "look through" doctrine, a federal habeas court must look to

the last reasoned state court opinion and presume that any later orders denying the same claim rest upon the same grounds. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Accordingly, Parker's Fourth Amendment claim was procedurally defaulted.

Parker cannot overcome the procedural default because he cannot demonstrate any prejudice as a result of the court's failure to address the merits of the suppression motion. The search warrant affidavit contained a photograph of the home to be searched, which the officers had been surveilling for a period of time. The officers also sought and relied upon the County GIS System to determine the address of the home, which turned out to be one digit off from the actual address. Importantly, there was no house 297, the existence of which might have put the officers on notice that they had the wrong address. But the court need not determine whether the warrant was valid. Under the circumstances, and in the absence of any evidence indicating a clearly visible posted address in front of the house, the officers objectively acted in good faith in obtaining and executing the search warrant, even if the address rendered the warrant invalid. *United States v. Leon*, 468 U.S. 897, 919–20 (1984) (holding that evidence is admissible if an officer conducts a search in objective good faith, relying upon a warrant issued by a detached and neutral magistrate); *Herring v. United States*, 555 U.S. 135, 145 (2009) (holding that police officer's conduct did not rise to the level of a Fourth Amendment violation when relying in good faith on an erroneous entry in computer system that should have been deleted); *United States v. McLamb*, 880 F.3d 685, 690–91 (4th Cir. 2018) (holding that good-faith exception applies when there is negligible deterrent value to suppressing evidence because of an unintentional ambiguity in the warrant application). Because Parker cannot establish

prejudice even if the court held the warrant invalid, he cannot overcome the procedural default of this claim.

Further, Fourth Amendment claims are not generally cognizable on federal habeas review if a state prisoner had the opportunity for full and fair litigation of the claim. *Stone v. Powell*, 428 U.S. 465, 494 (1968). *Stone* requires only the availability of procedures for the defendant to litigate the issue in state court; a defendant's failure to take advantage of the opportunity, whether intentionally or through inadvertence, does not circumvent the rule of *Stone*. *United States ex rel. Maxey v. Morris*, 591 F.2d 386, 388–89 (7th Cir. 1979), *cert. denied*, 442 U.S. 912 (1979); *Caver v. Alabama*, 577 F.2d 1188, 1193 (5th Cir. 1978); *Lenza v. Wyrick*, 665 F.2d 804, 808 (8th Cir. 1981).

Because Virginia provides the opportunity to litigate Fourth Amendment claims and because Parker's claim was procedurally defaulted, claim 2 must be dismissed.

C. Claims 3 and 6 – Sufficiency of the Evidence

Claims 3 and 6 are essentially the same claim: that the evidence was insufficient to support the firearms convictions. This claim was presented to the Supreme Court of Virginia on Parker's direct appeal and was decided on the merits; thus, the claim is fully exhausted. When considering a claim adjudicated on the merits in the state court, a federal habeas court may grant relief only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). The federal court must presume that the state court's factual findings are correct, and this

presumption can be overcome only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The question is not whether the court believes that the state's determination of facts is correct, but whether the determination is reasonable; proving an unreasonable determination of facts requires substantially more than proving an incorrect determination of facts. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

The written opinion of the Court of Appeals of Virginia is the last reasoned state court opinion on sufficiency of the evidence. When the Supreme Court of Virginia denied Parker's appeal, the effect of denial is affirmance of the judgment on the merits. *Saunders v. Reynolds*, 204 S.E.2d 421, 424 (Va. 1974). Thus, the federal court presumes that the state high court accepted the reasoning of the lower court, "looks through" the supreme court's denial, and reviews the reasoning and factual findings of the court of appeals. *Ylst*, 501 U.S. at 803. The same deferential standard of review prescribed by § 2254(d) and (e) applies to the review of the court of appeals opinion.

The state court determined that Parker constructively possessed the firearms because he admitted knowing the guns were in the safe, and he directed his wife to open the safe for police, indicating his dominion and control over the safe and its contents. In addition, officers found scales with marijuana residue, consistent with Parker's admitted marijuana-distribution venture, inside the safe, Parker's identification in the kitchen on top of a bullet, and one of the guns in the master bedroom on the nightstand, not locked in a safe. The trial court disbelieved Parker's testimony that he didn't exercise any control over the guns and that he did not know there were any guns in the bedroom that he shared with his wife. (CAV R. at 59.) Even if this court might have reached a different factual conclusion, it cannot say, under deferential review,

11

that the factual conclusions reached by the state court are incorrect, much less unreasonable. *See Jackson v. Virginia*, 443 U.S. 307 (1979).

*Jackson* governs constitutional sufficiency-of-the-evidence claims and holds that a federal court can grant relief on a sufficiency claim only if the evidence at trial, in the light most favorable to the government, is such that no rational trier of fact could have found guilt beyond a reasonable doubt. *Id.* at 319, 324. The state court's decision is contrary to federal law only if it reaches a legal conclusion that is directly opposite to a Supreme Court decision, or if it reaches the opposite result from the Supreme Court on facts that are materially indistinguishable from the Supreme Court case's facts. *Williams v. Taylor*, 529 U.S. 362 (2000). A state's decision is an unreasonable application of federal law only if the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fair[-]minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). As with the court's factual determination, the question is not whether a federal court believes the state court's legal decision is incorrect, but whether the decision is unreasonable, which is a "substantially higher threshold." *Schriro*, 550 U.S. at 473. The state court need not cite the Supreme Court case or even be aware of it, so long as neither the reasoning nor the result of the state court decision contradicts the Supreme Court case. *Early v. Packer*, 527 U.S. 3, 8 (2002).

The standard used by the court of appeals was whether the judgment was "plainly wrong or without evidence to support it," viewing the evidence in the light most favorable to the Commonwealth. (CAV R. at 57.) This standard does not contradict the standard in *Jackson*. Both view the evidence in the light most favorable to the prosecution. Both require more than

disagreement with the decision. A decision that is plainly wrong and unsupported by any evidence is unreasonable. In this case, however, substantial evidence supports the factual determination of the state court that Parker constructively possessed firearms. Parker's challenge to the sufficiency of the evidence fails and claims 3 and 6 must be dismissed.

D. Claim 4 – Alleged Failure to Obtain Waiver of Jury Trial

In claim 4, Parker alleges that the trial court lacked jurisdiction to try his case—because he did not personally waive his right to trial by jury—and that the trial court's actions violated his due process right to a fair trial by a jury of his peers. But Parker did not raise this objection on direct appeal of his conviction. In his state habeas petition, Parker argued that the trial court lacked jurisdiction under Article 1, Section 8 of the Virginia Constitution because "the conviction and sentencing orders do not show that Parker waived his right to a jury trial or that the Commonwealth concurred in the waiver. . ." (Pet. for Writ of Habeas Corpus at 7, Ex. F to Resp't's Br. in Supp. of Mot. to Dismiss, ECF No. 25-6.) His entire argument rested upon a line of Virginia cases which hold that conviction after a bench trial must be set aside if the trial court failed to enter on the record the accused's consent to waiver of a jury trial. *Richardson v. Commonwealth*, 796 S.E.2d 854, 857 (Va. Ct. App. 2017).[4] As previously discussed in subsection A, state-law claims are not cognizable on federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Stated differently, a Virginia court's interpretation of the Virginia constitution is generally not reviewable by this federal court.

Federal habeas relief is only available if a prisoner is confined in violation of the United States Constitution or federal law. 28 U.S.C. § 2254(a). Nowhere in the state petition did Parker

---

[4] Richardson and the other cases Parker cited, however, involved direct appeals, not habeas petitions.

13

argue that he was denied his federal right to due process or his federal right to jury trial; that argument first appears in the federal petition. (ECF No. 1 at 28.) Although the alleged operative facts were presented in state court, the controlling federal legal principles were not presented to the state court, so the federal constitutional issue was not exhausted. *Kasi v. Angelone*, 300 F.3d 487, 501–502 (4th Cir. 2002). If Parker attempted to return to state court now, the claim would be procedurally barred as untimely or as a second or subsequent petition. Va. Code § 8.01-654(A)(2) & (B)(2). Accordingly, the federal portion of claim 4 is simultaneously exhausted and defaulted. *Bassette*, 915 F.2d at 936–37.

Parker has not shown good cause for this default, and therefore cannot overcome his procedural default of the federal issue. Cause for default requires the existence of some objective factor, external to the prisoner. *Coleman*, 501 U.S. at 756–57. Examples of good cause for default include a factual basis for the claim that is not reasonably ascertainable to the prisoner at the time of default, coercion, or interference by government officials that makes compliance impossible, such as failing to provide transcripts. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Reed v. Ross*, 468 U.S. 1, 15 (1984). In addition to his attorney advising the trial court that Parker waived his right to a jury trial, in Parker's presence, the record establishes that Parker acknowledged in writing that he wished to have a trial by judge, not jury, when he entered his pleas of not guilty on June 10, 2015. (R. at 30–31.) If he wished to have a jury trial, it was incumbent upon him to say so, not standing silent while his attorney waived it for him, and certainly not by signing an acknowledgment of his right to trial by jury and saying that he preferred to be tried by a judge. Parker, in sum, has not shown good cause for procedurally

defaulting this issue. As the record does not support the factual basis for this allegation, claim 4 must be denied.

### E. Claim 5 – Ineffective Assistance of Counsel

Parker raised claim 5, ineffective assistance of counsel, before the Supreme Court of Virginia in his state habeas petition, which the state court denied on the merits. Parker alleges that his trial counsel was ineffective for failing to file a motion to suppress un-Mirandized statements he made to his wife on the phone, which were overheard by one of the investigating officers. As previously noted, when the state court has determined an issue on the merits, a federal court may not grant relief unless the state's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1)-(2).

When reviewing claims for ineffective assistance of counsel, courts apply a highly deferential standard. A petitioner must show that counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner must meet both prongs to prevail.

To establish prejudice under *Strickland*, Parker must show that there was "a reasonable probability that the outcome of the proceedings would have been different," which means "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Deficient performance requires a showing that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 688. The reviewing court must not rely upon "the distorting effects of hindsight," but must presume that counsel's

decisions and actions fell within the wide range of reasonable strategy decisions. *Id.* at 689–90. The *Strickland* standard is "doubly deferential" in the context of a habeas petition, because the deferential standard of review required by § 2254 overlaps with the deferential standard under *Strickland*. *Woods v. Etherton*, ___ U.S. ___, 136 S. Ct. 1149, 1151 (2016); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). In other words, on habeas review, federal courts are to give the benefit of the doubt to both the state court and the defense attorney. *Woods*, 136 S. Ct. at 1151.

The state habeas court concluded from the record that Parker was not being interrogated at the time he spoke with his wife on the phone, so no warnings were required under *Miranda v. Arizona*, 384 U.S. 436, 469–73 (1966). The court summarized its factual determinations as follows:

> [A]t the time petitioner made this comment, he was not being subjected to custodial interrogation. Rather, petitioner made this comment to his wife, over the phone, in the hearing of officers who were present to execute a search warrant. Petitioner has failed to identify any words or actions on the part of the officers that counsel could reasonably have argued constituted the functional equivalent of interrogation.

*Parker v. Clarke*, No. 171346, slip op. at 2 (Va. S. Ct. Apr. 19, 2018) [ECF No. 25-7].

The court's determination of the facts was a reasonable one. The testimony of record is that officers were executing a search warrant at the house where marijuana was being grown. They told Parker not to discuss the case with them until they got back to the sheriff's office, where they planned to interview him. Other officers were executing a warrant at Parker's residence, 19 miles away, where Parker's wife was present. At his wife's request, one of the officers contacted the officers at the grow house to see if Parker could speak to her. The officer put Parker on the phone and overheard the statements Parker made to his wife, telling

16

her to open the safe for the officers. Because the court reasonably concluded that Parker was not subject to custodial interrogation when he made the statements to his wife, the *Miranda* warnings were not required. *Minnesota v. Murphy*, 465 U.S. 420, 431 (1984); *Beckwith v. United States*, 425 U.S. 341, 347 (1976); *United States v. Leshuk*, 65 F.3d 1105, 1109–10 (4th Cir. 1995). Nor did any evidence indicate that Parker's statements to his wife were involuntary. Based on this reasonable determination of the facts, the court reasonably concluded that there was no factual basis for a motion to suppress on these grounds. Because Parker could not prevail on such a motion to suppress, he suffered no prejudice because of counsel's failure to file the motion. And because Parker could not prevail on such a motion, there was nothing deficient in counsel's failure to file one. The court's legal conclusions were a reasonable application of federal law as set forth in *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980), and in *Arizona v. Mauro*, 481 U.S. 520, 529 (1987). Claim 5, therefore, must also be dismissed.

## IV. Conclusion

For the reasons discussed above, the court will grant the respondent's motion to dismiss.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to Parker and to counsel of record for the respondent.

**ENTERED** this 1st day of October, 2020.

_____
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE